UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| SA BAY LLC, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-10-66 |
| | § | |
| BUFORD HALL, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Plaintiff SA Bay, LLC's ("Plaintiff") Motion for Partial Summary Judgment on Liability (Dkt. No 27), to which Defendants Buford "Bubba" Hall ("Hall") and Cynthia Alford ("Alford") (collectively "Defendants") have responded (Dkt. No. 33),[1] and Plaintiff has replied (Dkt. No. 35). Also pending before the Court is Defendants' Motion for Leave to File First Amended Answer (Dkt. No. 34), to which Plaintiff has responded (Dkt. No. 35). Having considered the motions, responses, record, and applicable law, the Court is of the opinion that Plaintiff's motion should be **GRANTED** and Defendants' motion should be **DENIED**.

## I. Factual and Procedural Background

Plaintiff owns and operates a restaurant in Seadrift, Texas that specializes in boiled seafood. Prior to Defendant Hall's employment by Plaintiff, Plaintiff's restaurant had been called *"The" Boiling Spot* and *Pappy's "The" Boiling Spot*. (The quotation marks around the definite article *The* are part of the name.) (Spencer Dep., Dkt. No. 27, Ex. 1 at 15:4-7.) By January 2010, the restaurant was using the name *Bubba's "The" Boiling Spot*. (*Id.* at 15:13-20.) According to

---

1. Bubba's "The" Boiling Spot, Inc. was later named as a defendant in this action (*see* Pl. First Amended Compl., Dkt. No. 18), but did not respond to Plaintiff's motion for summary judgment.

Plaintiff's principal, Randy Spencer ("Spencer"), *Bubba's* became part of the name, pursuant to Hall's request, about four weeks after Hall started working as a manager at Plaintiff's restaurant. (*Id.* at 15:13—16:5.)

From the start of Hall's employment, Hall and Spencer discussed the possibility of Hall's participation in a deal to purchase the restaurant. (Spencer Dep. at 16:12-14; Hall Dep., Dkt. No. 27, Ex. 2 at 29:15—30:24.) However, when the deal fell through, Hall made plans to open his own restaurant down the street. (Hall Dep. at 37:16—38:17.)

In May 2010, Defendant Alford[2] submitted to the Texas Secretary of State the paperwork for creating a corporation named *Bubba's "The" Boiling Spot, Inc.* (Dkt. No. 27, Ex. 5.) The paperwork listed Hall and Alford as the corporation's only directors. (*Id.* at 2.) Shortly thereafter, Defendant Bubba's "The" Boiling Spot, Inc. applied to the Texas Alcoholic Beverage Commission (TABC) for a permit to sell beer and wine. (Dkt. No. 27, Ex. 7.) Alford testified that she prepared the application. (Alford Dep., Dkt. No. 27, Ex. 6 at 70:22-25.) Hall signed the TABC paperwork in several locations, listing his title as "President." (Dkt. No. 27, Ex. 7 at 1, 2, 8, 10.)

On June 11, 2010, Plaintiff filed suit against Defendants in Texas state court. *See SA Bay LLC vs. Buford Hall and Cynthia Alford*, No. 10-6-1033 (135th Dist. Ct. Calhoun County, Tex.). Plaintiff's primary goal in that action was to persuade the state court to enforce a non-compete clause against Hall. Plaintiff also sought damages for breach of fiduciary duty.

Then on June 12 and June 16, 2010, Hall ran two newspaper advertisements announcing that *Bubba's "The" Boiling Spot* was closing as of June 11, 2010 and would reopen at a new

---

2. According to Plaintiff's Verified Complaint, Alford was formerly employed as Plaintiff's bookkeeper. (Dkt. No. 1 ¶ 11.) Because Plaintiff's First Amended Complaint (Dkt. No. 17) supersedes Plaintiff's Verified Complaint and renders it of no legal effect, this allegation, although verified, does not constitute competent summary judgment evidence. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). However, Defendants do not dispute this fact, nor does the Court find it to be dispositive on the issue of liability under the Lanham Act.

location on July 15. (Dkt. No. 27, Exs. 8 & 9.) Defendants then opened their own seafood restaurant under the name *Bubba's "The" Boiling Spot* in July 2010. (Hall Dep. at 81:23-25.) Defendants also used the name *Bubba's "The" Boiling Spot* for about 30 days on exterior signs at their restaurant before it opened. (*Id.* at 81:7-17.)

Plaintiff thereafter nonsuited Defendants in the state suit and initiated this federal action on August 23, 2010, alleging causes of action against Defendants for common law infringement, unfair competition, violation of the Lanham Act, defamation (slander and/or libel), conversion, and breach of fiduciary duty. (Dkt. No. 1.)[3] Plaintiff now moves for summary judgment on its federal Lanham Act claim and its parallel claims under Texas law for infringement and unfair competition only.[4] With respect to the claims at issue, Plaintiff's motion addresses only liability, not damages.

## II. Legal Standards

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-

---

3.   Plaintiff also sought a temporary restraining order (TRO) restraining Defendants from using or disclosing any of Plaintiff's financial data, instructing Defendants to return to Plaintiff all documents in their possession containing any of Plaintiff's financial data, and instructing Defendants to cease using, for Hall's restaurant, a name that contains the term *Boiling Spot*. On August 25, 2010, the Court scheduled a hearing on Plaintiff's TRO application, at which time the Parties announced that they had reached an agreement with respect to the TRO only. On August 31, 2010, the Court entered an agreed Order on Plaintiff's TRO application, wherein Defendants agreed not to use the term *Boiling Spot* as or part of the name of their restaurant. (Dkt. No. 6.)

4.   "The [Court's] analysis with respect to [Plaintiff's] claims under the Lanham Act will be dispositive of its corresponding claims under Texas law as well. 'A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.''" *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied) (quoting *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ))).

movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718—19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323—25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

**B. The Lanham Act**

Trademark and service mark infringement claims are governed by the Trademark Act of 1946, also known as the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* The Lanham Act provides in part that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "A mark need not be registered in order to obtain protection" under the Lanham Act, however, "because 'ownership of trademarks is established by use, not by registration.'" *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008) (quoting *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 842 (5th Cir. 1990)).

There are two elements a plaintiff must prove in order to establish an infringement claim under the Lanham Act. "The plaintiff must first 'establish ownership in a legally protectible [*sic*] mark, and second, . . . show infringement by demonstrating a likelihood of confusion.'" *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 (5th Cir. 2010) (quoting *Smack Apparel*, 550 F.3d at 474); *see also Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008) (per curiam) ("To succeed in a trademark infringement claim, a party must first show that it has a protectable right in the mark and, second, show that there is a likelihood of confusion between the marks.").

### 1. Legally Protectable Mark

A legally protectable mark may be "'any word, name, symbol, or device, or any combination thereof' that is used or intended to be used 'to identify and distinguish' a person's goods 'from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Smack Apparel*, 550 F.3d at 475 (quoting 15 U.S.C. § 1127). A mark is legally protectable if it "is sufficiently distinctive to warrant protection as a service mark," which may occur in either of two ways:

> First, a mark is inherently distinctive if its intrinsic nature serves to identify a particular source. . . . Second, a mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself.

*Amazing Spaces*, 608 F.3d at 237 (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210—11 (2000)). An inherently distinctive mark "'almost *automatically* tells a customer that it refers to a brand and . . . immediately signal[s] a brand or a product source.'" *Id.* at 240 (quoting *Wal-Mart*, 529 U.S. at 212) (emphasis in *Wal-Mart*).

"In *Abercrombie,* Judge Friendly sought to arrange the universe of marks into a spectrum of distinctiveness." *Amazing Spaces*, 608 F.3d at 240 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). "'[F]ollowing the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful.'" *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *see also Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (noting that "[m]arks are normally assigned" to these categories). The Fifth Circuit has described the latter of these categories as follows:

> A *suggestive* term suggests, rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the

imagination in order to draw a conclusion as to the nature of the goods and services.

. . .

*Arbitrary or fanciful* terms bear no relationship to the products or services to which they are applied. . . . The term Kodak is properly classified as a fanciful term for photographic supplies; Ivory is an arbitrary term as applied to soap.

*Amazing Spaces*, 608 F.3d at 241 (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698

F.2d 786, 790—91 (5th Cir. 1983), *abrogated on other grounds by KB Permanent Make–Up,*

*Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)).

Under the scheme set forth in *Abercrombie*, suggestive, arbitrary, and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection," while "[g]eneric terms receive no trademark protection, [and] descriptive terms merit protection only if they have secondary meaning." *Xtreme Lashes*, 576 F.3d at 227 (citing *Two Pesos*, 505 U.S. at 768—69).

### 2. Likelihood of Confusion

The Fifth Circuit has held that the basic test for every type of "unfair competition" claim, including trademark infringement, is the "likelihood of confusion" test. *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703 (5th Cir. 1981), *cert. denied,* 457 U.S. 1126 (1982). In determining whether a likelihood of confusion exists, the Fifth Circuit considers the following non-exhaustive list of factors: (1) the type of trademark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). Courts also consider (8) the degree of care exercised by potential purchasers. *Smack Apparel*, 550 F.3d at 478. "No one factor is dispositive, and a

finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Elvis Presley Enters.*, 141 F.3d at 194.

## III. Analysis

To prevail on its trademark infringement claim, Plaintiff must show that: (1) Plaintiff has a legally protectable ownership interest in the name *Bubba's "The" Boiling Spot*, and (2) Defendants' use of the name *Bubba's "The" Boiling Spot* created a likelihood of confusion between the marks. *See Amazing Spaces*, 608 F.3d at 235; *Paulsson*, 529 F.3d at 309.

### A. Ownership in a Legally Protectable Mark

Defendants argue that the name *Bubba's "The" Boiling Spot* falls into the descriptive or personal name category, while Plaintiff argues that *Bubba's "The" Boiling Spot* is suggestive. In *Zatarains*, the Fifth Circuit set forth a number of different tests that courts may use to determine whether a mark is descriptive or suggestive in nature.

The first starting point is the dictionary. *Zatarains*, 698 F.2d at 792. In *Zatarains*, the mark "Fish-Fri" in was held to be descriptive rather than suggestive because "fish fry" could be found in the dictionary, and the connection between the name and the product was "so close and direct that even a consumer unfamiliar with the product would doubtless have an idea of its purpose or function." *Id*. The Court takes judicial notice that neither *Bubba's "The" Boiling Spot* nor "boiling spot" are defined in the Merriam-Webster, Oxford, or American Heritage dictionaries. As such, Defendant claims that "the dictionary is not helpful," and this test is irrelevant. (Dkt. No. 33 at 4.) However, because "[t]he dictionary definition of the word is an appropriate and relevant indication 'of the ordinary significance and meaning of words' to the public," *Zatarains*, 698 F.2d at 792, a word's absence from the dictionary is indicative that the word has no ordinary significance or meaning to the public. Thus, the fact that the term "boiling

spot" is not defined in the dictionary does not mean that the dictionary is "not helpful," but instead suggests that the phrase lacks a direct connection with the product, thus weighing against Defendants' claim that Plaintiff's mark is descriptive.

"The 'imagination test' is a second standard used by the courts to identify descriptive terms. . . . If a term 'requires imagination, thought[,] and perception to reach a conclusion as to the nature of goods,' it is considered a suggestive term." *Zatarains*, 698 F.2d at 792 (quoting *Stix Prods., Inc. v. United Merchants & Mfrs.*, 295 F. Supp. 479, 488 (S.D.N.Y. 1968)). Plaintiff argues that the name *Bubba's "The" Boiling Spot* does not specifically describe a seafood restaurant, but suggests one, then further requires consumers to imagine that the food served there has been boiled, and finally invites the consumer to imagine that the food served is boiled seafood, namely boiled shellfish. The Court agrees that here, as in "Coppertone . . . in regard to suntanning products," the name *Bubba's "The" Boiling Spot* "requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods and services." *Amazing Spaces*, 608 F.3d at 241; *see also Xtreme Lashes*, 576 F.3d at 227 (finding that "the consumer must exercise some imagination to associate 'xtreme lashes' with 'artificially elongated eyelashes'").

A third test used to classify descriptive marks is "'whether competitors would be likely to need the terms used in the trademark in describing their products.'" *Zatarains*, 698 F.2d at 793 (quoting *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 379 (7th Cir. 1976). Under this test, the Court finds that, unlike phrases such as "Cajun seafood," "Cajun restaurant," "boiled seafood," or "boiled shellfish," it is unlikely that other Cajun seafood restaurants would *need* to

use the phrase *Bubba's "The" Boiling Spot*—or even "boiling spot"—in describing their product.[5]

In a related test, courts may consider "the extent to which a term actually has been used by others marketing a similar service or product." *Zatarains*, 698 F.2d at 793 (citing *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 117 (5th Cir. 1979); *Shoe Corp. of Am. v. Juvenile Shoe Corp.*, 266 F.2d 793, 796 (C.C.P.A. 1959)). Defendants claim that this test necessitates a finding that *"The" Boiling Spot* is descriptive, since "[a] simple search of restaurants using the term 'Boiling Spot' or 'Boiling Pot' reveal [*sic*] a number of restaurants all over Texas that use the term to describe their particular restaurants." (Dkt. No. 33 at 5.) The Court first notes that whether there are a number of other restaurants in this area using the term "Boiling Pot" is irrelevant in this action, as the mark at issue here is *Bubba's "The" Boiling Spot.* Moreover, Defendants have failed to present evidence that there is even one other restaurant in this region, let alone a number of restaurants, using the term "Boiling Spot" in its name—no printouts of Google searches, no phone books listings, no business registrations with the Secretary of State, etc. It is not the Court's responsibility to search out these alleged businesses in order to substantiate Defendant's claim that they exist.

Defendants argue that summary judgment is nonetheless precluded because the categorization of the mark *Bubba's "The" Boiling Spot* is a factual issue. While it is true that the correct categorization of a given term is a factual issue, *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 n.12 (5th Cir. 1980), based on the evidence before the Court, Defendants have failed to create an issue of material fact on this issue.

---

5. The record shows that Defendants themselves did not *need* to use *"The" Boiling Spot* to describe their restaurant, as they changed its name to *Bubba's Cajun Style Seafood* after this lawsuit was initiated. (Hall Dep. at 77:21-23.)

Under the tests set forth by the Fifth Circuit in *Zatarains*, the Court finds that the marks *Bubba's "The" Boiling Spot* and *"The" Boiling Spot* are suggestive.[6] As such, Plaintiff's mark is deemed inherently distinctive and is entitled to protection under the Lanham Act.

**B. Likelihood of Confusion**

Next, Plaintiff must establish that Defendants' use of the name *Bubba's "The" Boiling Spot* created a likelihood of confusion in the minds of potential consumers. As noted *supra*, when assessing the likelihood of confusion, courts in the Fifth Circuit consider a non-exhaustive list of so-called "digits of confusion" set forth in *Smack Apparel*, 550 F.3d at 478.

**1. Type of Trademark**

"The first digit, the type of mark, refers to the strength of the mark. Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark." *Smack Apparel*, 550 F.3d at 478—79 (footnotes omitted).

The Court has already concluded that *Bubba's "The" Boiling Spot* and *"The" Boiling Spot* are suggestive, *see* Part III.A*, supra*, which means that they are inherently strong. *See Xtreme Lashes*, 576 F.3d at 227. Defendants nonetheless contend that the marks were weak because Plaintiff's use of *Bubba's "The" Boiling Spot* was centered on Hall as an individual, Plaintiff's business was a revolving door of restaurant names, and Plaintiff only used *Bubba's "The" Boiling Spot* from January 2010—June 2010.

In discussing the strength of the mark *Bubba's "The" Boiling Spot*, Defendants incorrectly focus solely on *Bubba's* as part of the name. Although the addition of *Bubba's* was at Defendant Buford Hall's request (Spencer Dep. at 15:24—16:5), the deposition excerpts cited by Defendants show that the "revolving door of restaurant names" under which Plaintiff

---

6. Defendants further contend that summary judgment should be denied because Plaintiff did not provide any analysis as to whether the mark has obtained secondary meaning. However, as the Fifth Circuit has made clear, "[s]uggestive terms require no proof of secondary meaning in order to be protected." *Soweco*, 617 F.2d at 1185.

previously operated its restaurant included *"The" Boiling Spot* and *Pappy's "The" Boiling Spot*. (Spencer Dep. at 15:4-20.) Because "[i]t is proper to give more weight to distinctive portions of a mark and less weight to unremarkable or generic portions," *Xtreme Lashes*, 576 F.3d at 227, with respect to the strength of the mark, the focus here should be on *"The" Boiling Spot*, not on *Bubba's*.

The Court finds that this factor weighs in favor of a likelihood of confusion.

### 2. Similarity of Marks

The second digit of confusion, similarity of the marks, is determined by comparing the marks' appearance, sound, and meaning. *Smack Apparel*, 550 F.3d at 479. "Even if two marks are distinguishable, we ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." *Xtreme Lashes*, 576 F.3d at 228.

Defendants concede that "there is no dispute that the marks were similar, and in fact were in all aspects identical." (Dkt. No. 33 at 6.) Thus, the Court finds that this factor weighs in favor of a likelihood of confusion.

### 3. Similarity of Products

Under the third digit of confusion, which considers the similarity of products or services, "the greater the similarity between products and services, the greater the likelihood of confusion." *Elvis Presley Enters.*, 141 F.3d at 202.

Here, Defendants used the mark to brand another seafood restaurant. Defendants concede, and the Court agrees, that "it is clear that this factor weighs in favor of creating confusion." (Dkt. No. 33 at 6.)

### 4. Identity of Outlets and Purchasers

The fourth digit of confusion requires analyzing the identity of retail outlets and purchasers. "'Dissimilarities between the retail outlets for and the predominant consumers of a plaintiff's and a defendant's respective goods lessen the possibility of confusion, mistake, or deception.'" *Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 Fed. App'x 630, 637 (5th Cir. 2008) (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980)).

Plaintiff asks the Court to take judicial notice of the fact that the distance between Plaintiff's restaurant at 304/314 E. Broadway and Defendants' restaurant at 1142 E. Highway 185 is less than one mile, that both are located in Seadrift, Texas, and that East Broadway and East Highway 185 are even the same road. Defendants concede that the restaurants are less than a mile apart and do not cite to any evidence of dissimilarities between the identities of the target consumers of the Parties' respective restaurants.[7] *See Brennan's Inc.* v. *Brennan*, 289 Fed. App'x 706, 708 (5th Cir. 2008) (affirming district court's finding of no likelihood of confusion where "the parties [were] not in direct competition for customers due to the distances between the restaurants and the sophistication of the potential patrons.")

The Court finds that this factor weighs in favor of a likelihood of confusion.

### 5. Identity of Advertising Media

"Generally, 'the greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion.'" *Am. Century*, 295 Fed. App'x at 637 (quoting

---

7. Defendants do argue, however, that "there was no confusion amongst the public" because "the citizenry knew who the Defendant Buford Hall ('Bubba') was and knew where to find him when he was an employee of Plaintiff and where to find him when he left and opened his new restaurant." (Dkt. No. 33 at 6.) This argument will be analyzed in Part III.B.7, *infra*.

*Quantum Fitness Corp. v. Quantum LifeStyle Ctrs.*, *L.L.C.*, 83 F. Supp. 2d 810, 827 (S.D. Tex. 1999)).

Defendants admit that they advertised their restaurant in the *Port Lavaca Wave*, the same newspaper in which Plaintiff advertised its restaurant. (Dkt. No. 27, Exs. 4, 8, 9.) Defendants further concede, and the Court agrees, that this factor weighs in favor of a likelihood of confusion.

### 6. The Defendants' Intent

"Although not necessary to a finding of likelihood of confusion, a defendant's intent to confuse may alone be sufficient to justify an inference that there is a likelihood of confusion." *Smack Apparel*, 550 F.3d at 481.

Plaintiff contends that, through their June 12 and June 16, 2012 newspaper advertisements (Dkt. No. 27, Exs. 8 & 9), Defendants actively and affirmatively worked to confuse the public about the origin of the restaurant that they were opening. According to Plaintiff, "[n]ot only did Defendants start a competing restaurant less than a mile down the road, using the exact same name as Plaintiff's restaurant, but Defendants falsely claimed that Plaintiff's restaurant was closing in favor of Defendants' restaurant." (Dkt. No. 27 at 8.) In response, Defendants argue that the advertisement contained an error, which Hall corrected as soon as it was called to his attention. As such, Defendants claim the advertisements are not proof of intent to deceive.

The record shows that Defendants' first advertisement stated that *Bubba's "The" Boiling Spot* and *LG Shrimp Co.*[8] would be closing their doors as of June 11, 2010 due to contract negotiations and would reopen on July 15, 2010 at Defendants' new location. (Dkt. No. 27, Ex.

---

8. Plaintiff explains, and Defendants do not dispute, that *LG Shrimp Co.* is a retail seafood outlet operating at the same location as Plaintiff's restaurant.

8.) The ad further stated, "We would like to thank all of our customers and apologize for the inconvenience—but hope to see you soon!" and was signed "Bubba, Sylvia, and The Crew." (*Id.*) Defendants' second ad stated that *Bubba's "The" Boiling Spot* would be reopening at a new location, again thanked their customers, and was also signed "Bubba, Sylvia, and The Crew." (Dkt. No. 27, Ex. 9.) However, the second ad stated that *L.G. Shrimp Co.* would continue operating at its old location at 314 E. Broadway. (*Id.*) Both ads also used cartoon drawings of crabs wearing chef hats, which were almost identical images contained in ads Plaintiff ran in the *Port Lavaca Wave* on February 27 and May 29, 2010. (Dkt. No. 27, Ex. 4 at 4 & 5.)

According to Hall's deposition testimony, the misprint in the first ad was that it should not have announced the closure and reopening of *LG Shrimp Co.*, but it was perfectly correct to announce the closure and reopening of *Bubba's "The" Boiling Spot*:

> Q. And can you tell me what the mistake is in this ad?
> A. We were supposed to say that LG Shrimp Company would continue to operate at this location.
> Q. Okay. So the error is that it references LG Shrimp Company is also closing its doors as of 6-11?
> A. Correct.
> Q. There is no problem from your perspective with Bubba's "The" Boiling Spot being mentioned in the ad as closing its doors due to contract negotiations?
> A. I am Bubba's "The" Boiling Spot.
> Q. All right. And so when the second ad comes out on June 16th [Dkt. 27-3 at 2], the difference there is that it says at the bottom, "LG Shrimp Co. will continue operating at 314 East Broadway in Seadrift," that corrects the mistake that was in the June 12 ad?
> A. I hope so.

(Hall Dep., Dkt. No 33, Ex. B at 84:17—85:13.)

Thus, Hall's own testimony shows that the error he corrected had nothing to do with Defendants' use of the name *Bubba's "The" Boiling Spot*, and even when Hall had an opportunity to correct the advertisement, he continued to let it falsely state that *Bubba's "The" Boiling Spot* would cease operating at its current location and would reopen elsewhere.

Finally, the Court recognizes that, despite the fact that Plaintiff had been operating a restaurant using *"The" Boiling Spot* in its name for a period of time before Hall ever entered the picture, Defendants did not just take the name *Bubba's* when they left Plaintiff's employ, but took *"The" Boiling Spot* as well. Hall does not explain why, other than to state that "*Bubba's "The" Boiling Spot*, I figured, was mine." (Hall Dep. at 88:8-10.) This further supports a finding that Defendants' intent was to trade on the goodwill of Plaintiff's mark.

The Court finds that this factor weighs in favor of a likelihood of confusion.

### 7. Any Evidence of Actual Confusion

The seventh digit is evidence of actual confusion. "Evidence that consumers have been actually confused in identifying the defendant's use of a mark as that of the plaintiff may be the best evidence of a likelihood of confusion." *Smack Apparel*, 550 F.3d at 483. Although "[a]ctual confusion is . . . strong proof that the likelihood of confusion exists," *Soweco*, 617 F.2d at 1186, "[p]roof of actual confusion is unnecessary, as the likelihood of confusion is the determinative factor." *Id.*

Defendants contend that "[u]pon direct examination [of] the principal for Plaintiff[,] it is clear that there is no evidence that would suggest the public is in any way confused regarding the businesses and who was involved in them." (Dkt. No. 33 at 7 and n.10.) The Court disagrees with Defendants' contention that "[c]learly this factor weighs in favor of there being no confusion created for the public" (*id.* at 7), as proof of confusion is not necessary. *Smack Apparel*, 550 F.3d at 483; *Soweco*, 617 F.2d at 1186. Moreover, the deposition testimony to which Defendant cites does not establish that there was no confusion, as Spencer merely responded that he "did not take a pole" [*sic*] of Seadrift residents to determine whether any

confusion existed between Plaintiff's and Defendants' restaurants. (Spencer Dep. at 23:23—24:2.) He did not testify that he took a poll, and the results showed no confusion.

Defendants also purport to present evidence that "there was no confusion amongst the public" because "the citizenry knew who the Defendant Buford Hall ('Bubba') was and knew where to find him when he was an employee of Plaintiff and where to find him when he left and opened his new restaurant." (Dkt. No. 33 at 6—7.) In support of this claim, Defendants cite Hall's deposition testimony that:

> [E]verybody in town named it once we got in there. They—everybody would say, 'Well let's go up to Bubba's and eat,' you know, because everybody knew me. City [H]all prettymuch named it, because they would come down there and, you know, all the workers said, "Let's go up to Bubba's and eat." So we just used that name.

(Hall Dep. at 27:2-5.) The Court first notes that it is impossible to tell from this excerpt to which restaurant Hall is referring, since Hall worked at Plaintiff's and Defendants' restaurants, and both contained *Bubba's* in their names in reference to Hall. Moreover, what Hall claims that "all the workers" and "everybody in town" said about "going up to Bubba's to eat" is hearsay, and is therefore not competent summary judgment evidence.

Because evidence of actual confusion is not necessary, the Court finds that this factor is neutral.

### 8.  The Degree of Care Exercised by Potential Purchasers

The Court agrees with Defendants that this factor is not relevant here.

### 9. Overall Finding of a Likelihood of Confusion

Although "the likelihood of confusion [is] ordinarily [a] question[] of fact, summary judgment may be upheld if the summary judgment record compels the conclusion that the movant is entitled to judgment as a matter of law." *Smack Apparel*, 550 F.3d at 474 (citing *Elvis*

*Presley Enters.*, 141 F.3d at 196). The Fifth Circuit has further emphasized "the rule that if the likelihood-of-confusion analysis is closely balanced, the question should be resolved in favor of the senior user." *Am. Century*, 295 Fed. App'x at 638 ("Summary judgment was properly granted to [senior user] on the likelihood-of-confusion claims" where "the evidence of likelihood of confusion . . . [was] closely balanced, and thus favor[ed] [senior user].").

Here, six factors weigh in favor of a likelihood of confusion, one factor is neutral, and no factors weigh against confusion. Thus, the Court finds that the evidence of likelihood of confusion is not closely balanced, but instead overwhelmingly compels the conclusion that that Defendants' use of the name *Bubba's "The" Boiling Spot* created a likelihood of confusion in the minds of potential consumers.

## IV. Defendants' Affirmative Defenses

The same day Defendants responded to Plaintiffs' Partial Motion for Summary Judgment on Liability, Defendants filed their Motion for Leave to File First Amended Answer in order to assert the affirmative defenses of fair use and unclean hands, and to seek the recovery of attorney's fees and costs. (Dkt. No. 34.)

### A. Fair Use

Defendants first seek leave to assert the affirmative defense of fair use. "The 'fair use' defense applies only to descriptive terms and requires that the term be 'used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin.'" *Zatarains*, 698 F.2d at 796 (citing 15 U.S.C. § 1115(b)(4)). Because the Court found in Part III.A, *supra*, that *Bubba's "The" Boiling Spot* and *"The" Boiling Spot* are suggestive and not descriptive, the affirmative defense of fair use does not apply in this case.

### B. Unclean Hands

Defendants further seek leave to assert the affirmative defense of the equitable doctrine of unclean hands. Defendants invoke the unclean hands defense on the ground that Plaintiff operated its restaurant not under its own name (SA Bay, LLC), but under the assumed name *Bubba's "The" Boiling Spot*, without having registered its assumed name as required under the Texas Business and Commerce Code, which provides as follows:

> (a) A person commits an offense if the person:
>> (1) conducts business or renders a professional service in this state under an assumed name; and
>> (2) intentionally violates this chapter.
> (b) An offense under this section is a Class A misdemeanor.

TEX. BUS. & COMMERCE CODE § 71.202. Defendants explicitly accuse Plaintiff of violating the criminal aspect of § 71.202, arguing that "[i]t is difficult for the Plaintiff to request the Court to determine that it in fact owns a protectable right in the name [*Bubba's "The" Boiling Spot*], when in fact the very use of this name by the Plaintiff is the commission of a crime in Texas." (Dkt. 33 at 2.)

"'It is old hat that a court called upon to do equity should always consider whether the petitioning party has acted . . . with unclean hands.'" *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 794 (5th Cir. 1999) (quoting *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 880 (1st Cir. 1995). However, "[t]his does not mean that courts must always permit a defendant wrongdoer to retain the profits of his wrongdoing merely because the plaintiff himself is possibly guilty of transgressing the law in the transactions involved." *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944). Instead, "[t]he maxim that he who comes into equity must come with clean hands is not applied by way of punishment for an unclean litigant but 'upon considerations that make for the advancement of right and justice.'" *Id.* (*quoting Keystone*

19

*Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). Thus, "[t]he ultimate decision is whether the deception actually caused by plaintiff 'as compared with the trading methods of the defendant warrant punishment of the plaintiff rather than of the defendant.'" *Project Strategies Corp. v. Nat'l Commc'ns Corp.*, 948 F. Supp. 218, 227 (E.D.N.Y. 1996) (quoting *Republic Molding Corp. v. B. W. Photo Utils.*, 319 F.2d 347, 349—350 (Cal. Ct. App. 1963).

In the Fifth Circuit, the defense of unclean hands further requires a defendant to "show that he has personally been injured by the plaintiff's conduct." *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979); *see also Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 379 (5th Cir. 2004) ("Because the defendants could not show that they were personally injured by [the plaintiff's] sampling of the Jackson Five song, they had no basis for invoking that sampling as the basis of an unclean hands defense."), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010); *Alcatel*, 166 F.3d at 796 ("To invoke the [unclean hands] doctrine, a defendant must show that he was injured by the plaintiff's improper acts.")

With respect to Defendants' accusation that Plaintiff violated § 71.202, Defendants have presented evidence that Plaintiff operated *Bubba's "The" Boiling Spot* without an assumed name certificate on file with the Texas Secretary of State. (Spencer Dep., Dkt. No. 33, Ex. A at 24:23-25.) However, Defendants have provided no evidence, nor have they alleged, that Plaintiff "intentionally violate[d] this chapter," as required under § 71.202(a)(2). *See Project Strategies*, 948 F. Supp. at 227 (rejecting clean hands defense in patent infringement case where defendant failed to produce "a scintilla of evidence of [plaintiff's] intent to deceive the public," which was a required element of the underlying crime of false marking that gave rise to defendant's clean

hands defense). Defendants have also failed to present any evidence that Plaintiff or any of its principals was ever charged with violating § 71.202.

Moreover, Defendants' Response to Plaintiff's Motion for Summary Judgment provides no evidence, and Defendants' proposed First Amended Answer does not allege, how Plaintiff's operation of *Bubba's "The" Boiling Spot* under an assumed name personally injured any of the Defendants. While Defendants do claim that "the purpose of the statute is to protect the public at large" (Dkt. No. 33 at 2), the Court finds that much like limiting copyright protection, "limiting [trademark] protection on a broad public injury rationale would lead to absurd and unacceptable results." *Mitchell Bros.*, 604 F.2d at 864.

Because Defendants have presented no evidence that Plaintiff intentionally violated § 71.202, or that Defendants were personally injured as a result, the Court finds that the unclean hands doctrine is inappropriate here.

## V. Conclusion

For the aforementioned reasons, Plaintiffs' Motion for Partial Summary Judgment on Liability (Dkt. No. 27) is **GRANTED**, and Defendants' Motion for Leave to File First Amended Answer (Dkt. No. 34) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 1st day of February, 2012.


JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE